UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TAYLOR HARDY, | ) |
| PLAINTIFF, | ) |
| v. | ) CASE NO.: 4:24-CV-21 |
| EHB LLC D/B/A NEON CACTUS, | ) |
| DEFENDANT. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Taylor Hardy brings this action against EHB LLC d/b/a Neon Cactus for violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, for discrimination against him on the basis or face and retaliation against him for his complaint of race discrimination.

## INTRODUCTION

Taylor Hardy began working for the Neon Cactus in about December 2022. He worked there until approximately March 11, 2023, when he was fired for raising complaints about race discrimination with Ethan Brown, one of the owners of the Neon Cactus. Specifically, he raised issues about discriminatory racial bias, racist comments, and a work environment that was saturated with hostility toward African Americans who failed to satisfy Brown's expectation that African Americans be assimilated to white Midwestern culture in order to fit into his bar. When confronted about this racism, Brown's defense was "I can't be racist, I have a black general manager [Hardy]," and "I invited you [Hardy] to my Christmas." Brown fired Hardy when Hardy raised a complaint about the discrimination, harassment, and hostile work environment.

## PARTIES

1. Taylor Hardy is an individual who resides in Tippecanoe County, Indiana.

2. Until he was fired in retaliation for his complaint of race discrimination, Hardy was an employee employed by Defendant within the meaning of the Civil Rights Act.

3. EHB LLC d/b/a Neon Cactus is an Indiana company with its principal place of business at 360 Brown Street, West Lafayette, IN 47906.

4. At the times relevant to Hardy's claims, EHB LLC was Hardy's employer within the meaning of the Civil Rights Act.

## JURISDICTION AND VENUE

5. This Court properly has jurisdiction over Hardy's claims pursuant to 28 U.S.C. § 1331 inasmuch as Hardy is asserting claim which arise under federal law.

6. This Court is a proper venue for Hardy's claims pursuant to 28 U.S.C. § 1391 because Defendant may be found within this district, and because a substantial portion of the acts or omissions giving rise to Hardy's claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

7. Hardy began working for the Neon Cactus when it re-opened in approximately September 2022.

8. Hardy was employed as the general manager of the Neon Cactus.

9. During Hardy's employment by the Neon Cactus, both Angela Brown and Ethan Brown, mother and son co-owners of the bar, exhibited racist behaviors and made racist comments.

10. In March 2023 Hardy experienced the most acute racist episodes.

11. In March 2023, Angela Brown instructed the DJ at the club to stop playing "black music."

12. Angela Brown got into an argument with a customer because the customer requested a particular hip hop song and asked why the Neon Cactus would not play it.

13. In a discussion that night, Ethan Brown acknowledged that Angela Brown does not like hip hop music, and Ethan Brown said, "I don't either."

14. Ethan Brown said that he "has a vision for how [he] want[s] this place… that's not what I want."
15. After the bar closed that night the DJ, Scott "Trey" Fisher, noted the concerns about racist behavior from the bar's ownership and the uncomfortable position it put him in.
16. Fisher's discomfort centered upon the owners of the Neon Cactus, Ethan Brown and Angela Brown, scolding him for and / or forbidding him from playing "black" music or "banger" music.
17. Discussing the issue later, Fisher stated that he was playing the music he was playing because the patrons of the bar were asking for it and because it was being favorably received by the patrons.
18. Fisher raised that issue to the other owner of the Neon Cactus, Ethan Brown.
19. In response to Fisher raising this issue with Brown, with Hardy present and part of the discussion, said "first of all, you know I'm not racist. If I was [sic] racist, I wouldn't have a black GM."
20. Ethan Brown was referring to his general manager, Taylor Hardy, who was present for the conversation.
21. Fisher immediately registered his discomfort with that statement from Ethan Brown, recognizing the comment to be racist.
22. Hardy immediately burst out in laughter at the absurdity of Brown's racist statement attempting to identify himself as *not* racist.
23. Ethan Brown's comment is textbook tokenism, the practice of making only a perfunctory or symbolic effort to include people from underrepresented groups to give the appearance of racial equality within a workforce.
24. Hardy had to excuse himself from the conversation.

25. When he returned, Fisher astutely asked for Hardy's input and opinion on the question of the racial issues.
26. Ethan Brown returned the conversation to the issue of black music versus white music.
27. In that context, Ethan Brown said "one shooting shuts me down."
28. Ethan Brown explicitly connected "black music" with violence.
29. Hardy confronted Ethan Brown, telling him "there are things that you say that lead me to be very uncomfortable."
30. Hardy specifically identified to Ethan Brown that it is ignorant and racist for saying that hip hop music makes people violent.
31. Hardy told Ethan Brown "me, being a black man, I can't stand for that."
32. Hardy also identified to Ethan Brown "yesterday, with the whole 'I have a black manager'" comment, that it was offensive to Hardy.
33. Hardy expressed to Ethan Brown his objection to being treated as the "token black manager."
34. Ethan Brown got defensive and fired Hardy for his complaints about the racist behavior exhibited by the owners of the Neon Cactus.

### COUNT I: DISCRIMINATION ON THE BASIS OF RACE

35. The Neon Cactus, by and through its owners, discriminated against Hardy on the basis of race.
36. Specifically, Hardy was subjected to severe and pervasive anti-black sentiment from the owners of the Neon Cactus.
37. Angela Brown and Ethan Brown made negative associations between what they considered "black" music – hip hop and rap music – and violence.

38. The Neon Cactus expected and required that Hardy comply with and implement their racist policies.

39. Because he is black, the Neon Cactus subjected Hardy to race-based harassment and a racially hostile work environment.

40. The Neon Cactus and its owners harmed Hardy by their discriminatory, harassing, and hostile behavior.

## COUNT II: Retaliation for Complaint of Race Discrimination

41. Hardy complained to Ethan Brown, an owner of the Neon Cactus, about his racially discriminatory comments, policies, patterns, practices, and plans.

42. Hardy complained to Ethan Brown about the race-based harassment and hostile work environment.

43. In response to Hardy's complaint of race discrimination, harassment, and hostile work environment, Neon Cactus owner Ethan Brown fired Hardy.

44. Neon Cactus owner Ethan Brown's has harmed Hardy by retaliating against Hardy for Hardy's protected activity of opposing the Neon Cactus' behavior which is unlawful under the Civil Rights Act.

## Prayer for Relief

**WHEREFORE** Plaintiff demands the following relief:

a. His lost wages;

b. His actual damages;

c. Compensatory damages;

d. Punitive damages;

e. The costs of this action;

f. His attorney's fees;

g. Such other relief as this Court determines to be necessary and proper.

/s/ Jason R. Ramsland
Jason R. Ramsland (#29443-29)
Ramsland Law LLC
880 Monon Green Blvd
Suite 101.32
Carmel, IN 46032
765.267.1240
jason@rams.land
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all matters for which a jury trial is available.

/s/ Jason R. Ramsland